1
2
3
4
5
6
7
8               **UNITED STATES DISTRICT COURT**
9               **CENTRAL DISTRICT OF CALIFORNIA**
10

| | |
|---|---|
| 11  JAMES F.C., | Case No.  CV 8:23-1787 (RAO) |
| 12              Plaintiff, | |
| 13      v. | **MEMORANDUM OPINION AND ORDER** |
| 14  MARTIN J. O'MALLEY,[1] Acting Commissioner of Social | |
| 15  Security, | |
| 16              Defendant. | |

17

18  **I.      INTRODUCTION**

19          Plaintiff James F.C.[2] ("Plaintiff") challenges the Commissioner's denial of his

20  application for disability insurance benefits ("DIB") and supplemental security

21  income ("SSI").  For the reasons stated below, the decision of the Commissioner is

22  **REVERSED.**

23

24  _____

25  [1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley,
    the Commissioner of Social Security, is hereby substituted as the defendant.

26  [2] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil

27  Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court
    Administration and Case Management of the Judicial Conference of the United

28  States.

## II.    SUMMARY OF PROCEEDINGS

Plaintiff applied for DIB on February 12, 2013, and for SSI on March 2, 2013, alleging disability beginning January 1, 2007.  (AR 174-78 (DIB), 183-91 (SSI).)  Plaintiff added checking accounts, income, and resources to his SSI application on March 25, 2013.  (AR 201-02.)  His claims were denied initially on June 12, 2013, and upon reconsideration on October 16, 2013.  (*See* AR 46-65, 66-87.)  Plaintiff requested an administrative hearing before an administrative law judge ("ALJ"), and the hearing was held on September 16, 2014.  (*See* AR 24-45.)

The November 4, 2014, Decision

On November 4, 2014, the ALJ followed the familiar five-step sequential evaluation process for determining disability and issued an unfavorable decision.  (*See* AR 8-23.)  At **step one**, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 1, 2007, the alleged onset date.  (AR 13.)  At **step two**, the ALJ determined that Plaintiff had one severe impairment: degenerative disc disease of the lumbar spine with grade 1 spondylolisthesis at L4-5.  (*Id.*)  At **step three**, the ALJ concluded that Plaintiff did not have an impairment or combination thereof that meets the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 14.)  The ALJ assessed that Plaintiff also had the residual functional capacity ("RFC") to perform less than a full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b):  He can stand six hours in an eight-hour day; stand or walk six hours in an eight-hour day with normal workday breaks but he may be able to change positions briefly one to three minutes every hour; occasionally lift 20 pounds and 10 pounds frequently; occasionally climb stairs, bend, balance, stoop, kneel, crouch or crawl; and no climbing ladders, ropes or scaffolds or working at unprotected heights.  (AR 15.)  At **step four**, the ALJ concluded that Plaintiff could perform past relevant work as a sales representative in financial services, which does not require the performance of work-related activities

precluded by his RFC.  (AR 19.)  The ALJ concluded Plaintiff was not under disability.  (*Id.*)

After the Appeals Council denied Plaintiff's request for review on September 5, 2019, (AR 1-6), Plaintiff filed suit asking the Court to reverse and remand the matter.  *See James C. v. Saul*, No. 19-2077 (C.D. Cal. Mar. 7, 2022).  This Court affirmed the Commissioner's decision.  The Ninth Circuit vacated that decision and remanded the matter in light of *Carr v. Saul*, 593 U.S. 83 (2021), which permits claimants to challenge the propriety of an ALJ's appointment in federal court even if they did not challenge it in administrative proceedings.  The Appeals Council remanded Plaintiff's case to a different ALJ because Plaintiff challenged the manner in which the ALJ was appointed.  (AR 598.)

The July 26, 2023, Decision

Another hearing at which an impartial vocational expert testified occurred on April 25, 2023.  (AR 509-55.)  The Commissioner issued a partially favorable decision on July 26, 2023.  (*See* AR 485-508.)

At **step one**, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 1, 2007, the alleged onset date.  (AR 491.)  At **step two**, the ALJ determined that Plaintiff had one severe impairment: disc disease of the lumbar spine.  (*Id.*)  At **step three**, the ALJ concluded that Plaintiff did not have an impairment or combination thereof that meets the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 493.)  The ALJ assessed that prior to January 1, 2022, the date Plaintiff became disabled, Plaintiff had the RFC to perform less than a full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b):  He can lift and carry 20 pounds occasionally and 10 pounds frequently; can stand and walk for six hours in an eight-hour workday; can sit for six hours in an eight-hour workday; cannot climb ladders, ropes or scaffolds; can occasionally climb ramps and stairs; and can occasionally balance, stoop, kneel, crouch, and crawl.  (AR 493.)  The ALJ determined Plaintiff's RFC was the same

post-January 1, 2022. (AR 496-97.) At **step four**, prior to January 1, 2022, the ALJ concluded that Plaintiff could perform past relevant work as a loan officer and license clerk (composite job), which does not require the performance of work-related activities precluded by his RFC. (AR 496.) As of January 1, 2022, Plaintiff had no past relevant work. (AR 498.) At **step five**, as of January 1, 2022, considering Plaintiff's age, education, work, experience, and RFC, no jobs exist in significant numbers in the national economy that Plaintiff can perform. (*Id.*) Accordingly, the ALJ concluded Plaintiff was not disabled prior to January 1, 2022, but then became disabled on that date, and remains disabled. (*Id.*)

On September 25, 2023, Plaintiff filed suit in this Court challenging the Commissioner's decision. (Dkt. No. 1.) The parties filed their respective briefs for the Court's consideration. (*See generally* Dkt. Nos. 14 ("Pl. Brief"), 16 ("Comm'r Brief"), 17 ("Pl. Reply").)

## III.   <u>STANDARD OF REVIEW</u>

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence, and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "Substantial evidence . . . is 'more than a mere scintilla[,]' . . . [which] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. __, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations omitted); *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotations omitted). "'Where evidence is susceptible to more

4

than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005)); *see also Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003)).

## IV.   <u>DISCUSSION</u>

Plaintiff raises three issues for review: (1) whether the ALJ applied the appropriate standard for cases filed prior to March 2017; (2) whether a mental impairment would preclude an SVP 6 reasoning level 4 job; (3) whether the ALJ properly evaluated Plaintiff's subjective symptom testimony. (Pl. Brief at 11-22.) Because remand is warranted on the third issue alone, the Court declines to address the first and second issues.

### A. Whether the ALJ properly evaluated Plaintiff's symptom testimony

Plaintiff argues the ALJ did not provide clear and convincing reasons to reject Plaintiff's symptom testimony. (Pl. Brief at 20.) The Commissioner argues the ALJ properly discounted Plaintiff's symptom testimony on the basis of objective medical evidence, conflicting statements between Plaintiff's statements and those of medical sources, improvement with treatment, and noncompliance with treatment. (Comm'r Brief at 8-14.) The Court agrees with Plaintiff.

### B. Plaintiff's Symptom Testimony

At the April 25, 2023 hearing, Plaintiff testified to having worked as a notary and loan officer between 2005 and 2008. (*See* AR 524-28.) Those jobs required him to sit at a table or in his car, sometimes traveling 125 miles away to an appointment.

5

(AR 528.) He stated that being in a car for that long became troublesome because of pain and needing to get up every 45 minutes to stretch. (*Id.*) Those jobs did not require heavy lifting. (AR 529.)

Between 2007 and 2012, Plaintiff searched for "sitting down jobs" where he did not have to lift much and could work only for a couple of hours per day. (AR 534.) He testified he does not think he could have worked during that time period because, starting in 2008, he experienced pain in his lower back. (AR 534-35.) Plaintiff did not have medical coverage during that time and experienced difficulty breathing and exerting himself. (AR 535.) He testified that when he got sick, he was sick for a couple of weeks. (*Id.*) Plaintiff stated he had pain in the L5 lumbar region that was worse than the pain in his neck, though the neck pain prohibited him from using his upper extremities because it would cause headaches. (AR 535-36.)

Plaintiff testified he had was fired from a job sometime after 2007; he was sick for two weeks and was fired upon his return. (AR 537.) He stopped working in his traveling notary business because the driving became "too much" for him, and he was taking strong painkillers. (*Id.*) Plaintiff testified that after moving boxes full of books, his back started hurting badly. (*Id.*) He testified to going to Urgent Care, which directed him to see a doctor. (AR 538.) Plaintiff denied having a concave shoulder, but state that doctors may have noticed something that did not cause him pain, and that one of his legs is shorter than the other. (*Id.*) Plaintiff experiences pain in his hands—they get stiff and tingly, and while it does not affect his ability to pick things up or grip, it makes it more difficult for him to tie things or move his fingers. (AR 538-39.) He feels the maximum weight he can carry is about the weight of a gallon of water; he began experiencing pain after holding up a gallon of water for about six seconds. (AR 539-40.)

Between 2012 and 2016, Plaintiff searched for and obtained phone solicitation jobs. They required a few hours per night, and his doctors had told him he should not work more than 25 or 30 hours per week. (AR 531.)

Plaintiff testified all of his telecom jobs after 2012 were part-time, sitting down jobs; he would have been unable to do those jobs full-time because he would need to move around a lot and would have missed a lot of workdays. (AR 540.)  Missing work was one of the reasons he had been let go from prior employment.  (*Id.*) Plaintiff began using a walker in 2014.  He has had two falls since getting the walker and needs to use either the cane or the walker at all times.  (AR 540-41.)

Plaintiff testified that his previous jobs have required attention to detail; that he took oxycodone on an as-needed basis; and that he did not feel capable of paying attention to detail when he was on oxycodone.  (AR 542-43.)  Plaintiff reported having trouble concentrating and that it affects his sleep.  (AR 543.)  Plaintiff has several inhalers, none of which use oxygen; his chronic obstructive pulmonary disease prevents him from doing anything too strenuous.  He experiences pain and shortness of breath when walking.  (*Id.*)  Plaintiff testified to receiving treatment from a pain management doctor, a psychologist, a psychiatrist, and a physical therapist. (AR 544-45.)

**C. Applicable Law**

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Once satisfied, the ALJ must examine the entire case record, which includes the claimant's own testimony, for evidence on the intensity, persistence, and limiting effects of her symptoms.  In evaluating the claimant's credibility, a court may consider a multitude of factors, such as inconsistencies between the claimant's statements, objective medical evidence, the claimant's daily activities, the claimant's

work record, and statements from healthcare providers or third parties about the nature, severity, and effect of the symptoms. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). However, a lack of objective medical evidence substantiating the claimant's statements about her symptoms by itself is not grounds for discrediting the claimant's symptom testimony. *Id.*

### D. Analysis

Here, the ALJ cited a lack of objective medical evidence as the sole reason for discounting Plaintiff's symptom testimony. (*See* AR 494-96.) Even assuming *arguendo* there *is* a lack of objective medical evidence substantiating Plaintiff's testimony, the ALJ erred here because objective medical evidence alone cannot discount that testimony. *See Bunnell*, 947 F.2d at 345.

The Court finds all of the Commissioner's arguments unpersuasive. (*See* Comm'r Brief at 9-13.) The Commissioner's argument that the ALJ relied on inconsistences with medical evidence, as opposed to a lack thereof, is unpersuasive because the relevant portion of the ALJ's decision is a mere summary of clinical findings that makes no connection to Plaintiff's testimony. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). The Commissioner's argument with respect to Dr. Ali's testimony and Plaintiff's purported improvement with treatment, (Comm'r Brief at 12-13), fails for the same reason. (*See* AR 494-95.) As to Plaintiff's purported noncompliance with treatment, (Comm'r Brief at 13), there is no indication the ALJ considered this factor because it is not mentioned in his decision, and the Court cannot affirm a decision on a ground upon which the ALJ did not rely. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003)).

///

///

///

8

## V.     REMAND

The Court recognizes Plaintiff has waited quite some time for a resolution to this matter, (Pl. Brief at 22), but the circumstances of his case do not rise to a level warranting remand for an award of benefits.  *See Brown-Hunter*, 806 F.3d at 495. Thus, the Court finds that remand for further administrative proceedings is appropriate, as further administrative review could remedy the ALJ's errors.  The ALJ failed to provide specific, clear, and convincing reasons supported by substantial evidence to discount Plaintiff's subjective symptom testimony.  On remand, the ALJ shall not only reassess Plaintiff's symptom testimony, but also Dr. Van Dyke's and Dr. Hemphill's medical opinions and Plaintiff's mental limitations. (*See* Pl. Brief at 11-17 (medical opinions), 17-19 (mental limitations); *see generally* Pl. Reply.)  The ALJ shall then reassess Plaintiff's RFC and proceed through step four and, if necessary, step five to determine what work, if any, Plaintiff is capable of performing.

## VI.     CONCLUSION

IT IS ORDERED that Judgment shall be entered **REVERSING** and **REMANDING** the decision of the Commissioner denying his applications for DIB and SSI.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED:  April 30, 2024                    _____/s/_____

ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**

9